UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | |
|---|---|
| ELORA GIN WAREHOUSE, LLC, ) | |
| ) | |
| Plaintiff, ) | No._____ |
| ) | Jury Trial Demanded |
| vs. ) | |
| ) | |
| CHEROKEE FABRICATION COMPANY, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

## COMPLAINT

COMES NOW, the Plaintiff, Elora Gin Warehouse, LLC, by and through undersigned counsel, and files this Complaint against Defendant Cherokee Fabrication Company, Inc. and states as follows:

## PARTIES

1. Plaintiff Elora Gin Warehouse, LLC ("Elora Gin"), is a Tennessee limited liability company with its principal place of business located at 338 Limestone Road, Elora, Lincoln County, Tennessee, 37328.

2. Defendant Cherokee Fabrication Company, Inc. ("Cherokee") is an Alabama corporation with its principal place of business located at 13244 Hwy 280 E, Salem, Lee County, Alabama 36874. Defendant Cherokee Fabrication Company, Inc. may be served with process through its registered agent, Russell H. Ninas, 1604 Broad Street, Phenix City, Alabama 36867.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as the parties are citizens of different states and the amount in controversy exceeds $75,000.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to Elora Gin's claims occurred in this District.

5. This Court holds personal jurisdiction of Cherokee under several statutory provisions:

> Tenn. Code Ann. §§ 20-2- 214(a)(1) and 20-2-223(a)(1) because Elora Gin's causes of action arise from Cherokee transacting business in Tennessee;
>
> Tenn. Code Ann. § 20-2-214(a)(5) because Cherokee entered into a contract with Elora Gin promising to provides goods in Tennessee;
>
> Tenn. Code Ann. §§ 20-2-214(a)(2) and 20-2- 223(a)(3) because Elora Gin's causes of action arise from tortious acts of Cherokee in Tennessee;
>
> Tenn. Code Ann. § 20-2-223(a)(4) because Cherokee regularly does business and derives profits from goods sold in Tennessee, and Elora Gin's causes of action arise from tortious acts of Cherokee outside of Tennessee; and,
>
> Tenn. Code. Ann. § 20-2-225 because the exercise of jurisdiction is consistent with the Due Process Clause of the United States Constitution.

## STATEMENT OF FACTS

6. Plaintiff Elora Gin Warehouse, LLC is a family-owned cotton gin serving farmers in middle Tennessee, and northern Alabama.

7. Defendant Cherokee Fabrication Company, Inc. is a metal fabrication that describes itself as "creating ginning solutions" for the cotton industry throughout the United States and internationally. Defendant Cherokee Fabrication Company, Inc. regularly conducts business in the State of Tennessee.

I.  **Background**

8.  Cotton production ranks third in terms of crops for Tennessee farmers. Tennessee annually produces about 550,000- 650,000 acres of cotton. Average lint yields range from 600 to 900 pounds of lint per acre. Cotton is produced in 23 counties statewide, with the majority grown in the western part of the state.[1]

9.  Cotton is fully mature and ready for harvesting approximately 160 days after being planted. Once the bolls have burst open, the farmers can prepare the cotton plants for harvesting. Harvesting generally begins in September for farmers in Tennessee.[2]

10. After harvesting, cotton arrives at cotton gins in compressed rectangular "modules" or "rolls". The cotton is placed in front of machines called Module Feeders. Module Feeders are the first entry of the cotton into the gin and integral to the gin's ability to adequately process cotton. Module Feeders literally break the compressed cotton apart and "feed" the seed cotton into the gin.

11. To install, uninstall or reinstall a Module Feeder, extensive labor and costs are required. A large area must be dug, concrete laid, and any existing structures expanded in height and width to accommodate the size of the Module Feeder. Cranes are required to install or uninstall the feeder head, and an electrician wires the Module Feeder once installed. Below are photographs from Defendant's website depicting the size and footprint of the Module(s) and/or Module Feeder(s)[3]:

---

[1] Cotton Production in Tennessee, *Christopher L. Main, University of Tennessee, Knoxville, available at* https://utcrops.com/wp-content/uploads/2021/01/W288-ProductionGuide.pdf.
[2] The Journey of Cotton: Harvesting, *Barnhardt Cotton, available at* https://barnhardtcotton.net/blog/journey-of-cotton-harvesting/#:~:text=Cotton%20is%20fully%20mature%20and,parts%20of%20the%20cotton%20belt.
[3] Cherokee Fabrication Company, Inc., *available at* https://cherokeefab.com/module-feeder/.





## II. **The Agreement**

12. On February 7, 2022, Plaintiff and Defendant entered into an agreement for Plaintiff to purchase equipment for its cotton gin, including a Module Feeder, Sand Separator and Auto Feed Control (hereinafter "the Agreement"). A true and exact copy of the Agreement is attached hereto as <u>Exhibit A.</u>

4

13. The total value of the order was $625,330. Plaintiff paid a down payment on February 7, 2022, in the amount of $113,310.00, and a second down payment on March 21, 2022, in the amount of $4,968.00. Plaintiff incurred financing costs for the purchase of the equipment.

14. At the time the Agreement was made, Defendant assured Plaintiff the equipment would be delivered no later than August 12, 2022, prior to Tennessee's cotton harvesting season, and promised Plaintiff it would send complete drawings of the equipment within two (2) weeks.

15. Based on the Agreement and Defendant's promise to deliver the equipment to Plaintiff by August, in time to install the equipment prior to cotton harvesting system, Plaintiff employed numerous contractors and services, including electricians, cranes, and contractors, to remove its old Module Feeder and physically alter the gin structure in anticipation of Defendant's delivery.

16. On February 21, 2022, Plaintiff contacted Defendant requesting the drawings that were promised within two weeks. Plaintiff was informed by Defendant the drawings were not ready but would be sent soon.

17. On March 23, 2022, Plaintiff contacted Defendant and expressed concern with delivery of the equipment by cotton harvesting season considering the drawings had not yet been provided. Plaintiff was promised that the delay in providing the drawings would not delay delivery of equipment.

18. On April 29, 2022, more than eleven (11) weeks after the promised delivery date, Defendant provided the equipment drawings to Plaintiff.

19. On June 30, 2022, Plaintiff contacted Defendant and requested an update on the Module Feeder with cotton harvesting season approaching. Defendant never responded.

5

20. On July 18, 2022, Plaintiff contacted Defendant to ask whether any parts of the Module Feeder could be delivered. Defendant never responded.

21. On August 9, 2022, Plaintiff contacted Defendant for an update on the Module Feeder. Defendant never responded.

22. On August 10, 2022, Plaintiff was contacted by Defendant and informed the Module Feeder would ship in 2-3 weeks and assured Plaintiff it would have the Module Feeder by August 31, 2022.

23. Despite its assurances and promises to Plaintiff, Defendant failed to ship and/or deliver the goods by the promised date of August 12, 2022, thereby causing enormous damage and injury to Plaintiff.

24. After missing the agreed shipping date, on multiple occasions, Defendant promised Plaintiff that Defendant would ship the equipment within 2 to 3 weeks. Plaintiff relied upon the newly-promised delivery date.

25. On August 16, 2022, Plaintiff contacted Defendant and requested electric drawings related to the promised equipment. Plaintiff was informed by Defendant the drawings were not ready.

26. On August 24, 2022, Plaintiff contacted Defendant for an update on the Module Feeder. Defendant never responded.

27. On August 26, 2022, a representative for Cherokee, Paul Owens, contacted Plaintiff and stated production of the Module Feeder was delayed and gave yet another new delivery date for the end of September 2022, after cotton harvesting season was set to begin. Plaintiff told Defendant that would not work because the gin had to be operational before harvest, and stated it

6

would start reinstalling its old Module Feeder in time to gin cotton. Plaintiff requested a refund of its down payment. Plaintiff made a good faith demand for restitution, to no avail.

28. On August 27, 2022, Defendant contacted Plaintiff and asked if it could install operational controls for Plaintiff's old Module Feeder. Plaintiff informed Cherokee that it did not need new controls for its existing feeder.

29. Defendant's failure to deliver the promised goods and services caused Plaintiff to incur the expense of reinstallation of its old Module Feeder and associated equipment.

30. On August 29, 2022, Plaintiff began reinstallation of its old Module Feeder before harvesting season began. Plaintiff ordered additional equipment parts and hired numerous services and contractors to reinstall its old Module Feeder. Specifically, Plaintiff rented equipment, ordered parts and hired a concrete installation company, electrician, Module Feeder programmer, two cranes and a steel manufacturing and installation company. Plaintiff estimates approximately $166,916.47 in expenses when they were forced to first remove and then reinstall its old Module Feeder in time for harvesting season. These damages include the amounts Plaintiff paid to Defendant in down payments of $118,278.00, the costs to reinstall the feeder of $145,666.47, additional labor costs of $20,800 ($16,000 for reinstallation and $4,800 in removal); and the financing loan costs including a $450 loan origination fee and 4.5% interest which has accrued and continues to accrue.

31. On September 13, 2022, Defendant contacted Plaintiff a second time about installing the controls on Plaintiff's old Module Feeder. Plaintiff again informed Defendant it installed its old Module Feeder and requested a refund of its down payment.

7

32. On September 26, 2022, Defendant's representative Paul Owens informed Plaintiff the Module Feeder previously purchased from Defendant was actually installed at another gin. Plaintiff again requested a refund of its down payment. Owens stated he would check into it.

33. On November 7, 2022, Defendant wrote Plaintiff and refused to refund its down payment. For the first time, Defendant stated it needed a notice of cancellation of the order in written form in order to cancel the order.

34. On November 22, 2022, Plaintiff wrote Defendant and confirmed in writing cancellation of the February 7, 2022 Agreement. Plaintiff stated, "In response to the letter you sent on November 7, 2022, Elora Gin Warehouse is confirming we are cancelling the order we placed on February 7, 2022. We have no need for a sand separator or feed control for a feeder that was not delivered. The delivery date of the feeder was crucial for ginning season. It is unclear why you state the feeder would have only been 15-20 days late. The agreed upon date for delivery was August 12. When Cherokee missed that date, we were promised August 31. That promise was false as well. Then no one would respond to our calls. As previously communicated, this order is cancelled and we expect a total refund."

35. As of the date of this Complaint, Plaintiff has not received a down payment refund and has incurred extensive costs and expenses as a result of Defendant's fraudulent conduct in failing to deliver the equipment and failing to return funds paid by Plaintiff for equipment that was never delivered.

36. As a further proximate result of Defendant's actions, Plaintiff has incidental and consequential damages and expenses.

## COUNT I
## BREACH OF CONTRACT
## (Pursuant to Tennessee Common Law)

8

Case 1:23-cv-00071-CHS    Document 1    Filed 03/31/23    Page 8 of 16    PageID #: 8

37. Plaintiff hereby realleges and adopts the preceding paragraphs of this Complaint as if set out more fully herein.

38. Defendant Cherokee Fabrication Company, Inc. entered into a contract with Plaintiff Elora Gin Warehouse, LLC, on February 7, 2022, for the sale and purchase of equipment that Defendant agreed to deliver to Plaintiff on or by August 12, 2022.

39. Plaintiff fully performed, and exceeded, all its obligations pursuant to the Agreement by remitting down-payments in the amount of $118,296.00 to Defendant for the delivery of the equipment. However, Defendant failed to honor its obligations.

40. Defendant owed Plaintiff a contractual duty and obligation to ship and/or deliver the purchased equipment by or on August 12, 2022.

41. When Plaintiff agreed to purchase the equipment, Defendant, who claims an "international footprint" for "complete ginning systems," was aware that time was of the essence in the delivery of the ginning equipment.

42. Defendant breached its contractual duty by failing to deliver the equipment on August 12, 2022, by its delay in delivering the equipment and failing to deliver the purchased equipment prior to Tennessee's gin season.

43. Defendant has failed and refused to repay the $118,296.00 to Plaintiff, although payment was duly demanded and clearly owed.

44. Defendant also breached the covenants of good faith and fair dealing that are implied in every contract.

45. As a direct and proximate result of Defendant's breach of the Agreement, Plaintiff has sustained and will continue to sustain damages in an amount to be determined at trial, including incidental and consequential damages, plus costs, interest, and reasonable attorney's fees.

## COUNT TWO
## BREACH OF CONTRACT
### (Pursuant to Tennessee's Uniform Commercial Code, Tenn. Code Ann. §47-1-101, *et seq.*)

46. Plaintiff hereby realleges and adopts the preceding paragraphs of this Complaint as if set out more fully herein.

47. Defendant Cherokee Fabrication Company, Inc. entered into a contract with Plaintiff Elora Gin Warehouse, LLC, on February 7, 2022 and agreed to deliver certain equipment to Plaintiff on or by August 12, 2022, in exchange for payment.

48. The Agreement attached as "Exhibit A" between the parties was a valid and enforceable contract for the sale of goods within Tennessee's Uniform Commercial Code, Tenn. Code Ann. § 47-1-101, *et seq.*

49. Defendant was a "seller" within the scope of Tennessee's Uniform Commercial Code.

50. Plaintiff was a "buyer" within the scope of Tennessee's Uniform Commercial Code.

51. Plaintiff fully performed its obligations to Defendant by payment of the down payments, to enable Defendant's delivery of the purchased equipment pursuant to the Agreement.

52. Defendant was contractually obligated to deliver the purchased goods.

53. As a result of Defendant's failure to deliver Plaintiff the purchased goods in accordance with the Agreement, Plaintiff is entitled to buyer's damages under Tenn. Code Ann. § 47-2-713.

54. After Defendant failed to timely deliver the purchased equipment and Plaintiff advised Defendant of its resulting cancellation of the Agreement pursuant to Tenn. Code Ann. §§

47-2-720, Defendant was obligated to pay Plaintiff restitution for the $118,296.00 in down payments pursuant to Tenn. Code Ann. §§ 47-2-718.

55. Plaintiff has made multiple, continuous demands for full reimbursement of the payments made, all to no avail.

56. As a result of Defendant's failure to timely deliver Plaintiff the purchased goods, it breached the Agreement with Plaintiff, causing financial harm to Plaintiff.

57. As a result of Defendant's failure to refund Plaintiff's down payments, it breached the Agreement with Plaintiff, causing financial harm to Plaintiff.

58. Defendant is legally obligated pursuant to Tennessee's Uniform Commercial Code to pay Plaintiff the sum of $118,296.00 for the purchased equipment that was never delivered.

59. The financial harm to Plaintiff caused by Defendant's breach of the Agreement included, but not limited to, incidental and consequential damages pursuant to Tenn. Code Ann. §§ 47-2-715 arising from Plaintiff's expenses incurred in removing and reinstalling its existing Module Feeder before cotton harvesting season began.

## COUNT THREE
## FRAUDULENT MISREPRESENTATION/
## FRAUDULENT INDUCEMENT

60. Plaintiff hereby realleges and adopts the preceding paragraphs of this Complaint as if set out more fully herein.

61. Defendant engaged in fraud and/or intentional misrepresentation when it represented and provided to Plaintiff false information and assurances relating to its ability to ship and deliver the equipment as specified in the Agreement. Defendant's misrepresentations did not end with the original promise of delivery. Defendant continued to make delivery

misrepresentations when it promised that the Module Feeder would ship and that Plaintiff it would have the Module Feeder by August 31, 2022.

62. Defendant solicited orders and payments without the intent of performing in full by delivering the goods for which Plaintiff had transmitted funds. Defendant made false and reckless statements regarding the availability of the equipment. Defendant knew, or should have known, that it would be unable to deliver the equipment. Defendant had no intention or realistic expectation of doing so.

63. Defendant induced Plaintiff to enter into the contract by making, among other things, these knowingly false statements and representations.

64. Plaintiff reasonably relied on Defendant's material and intentional misrepresentations in entering into the Agreement, removing its original Module Feeder, and thereafter delaying reinstalling its original Module Feeder.

65. Defendant's actions were intentional, willful, malicious and/or reckless and entitle Plaintiff to punitive damages.

66. Defendant knew of its inability to procure and deliver the equipment as specified in the Agreement and made those misrepresentations and falsehoods intentionally, willfully, maliciously, and recklessly with the intent to deceive Plaintiff and induce it into entering into the Agreement.

67. As a direct and proximate cause of the willful and intentional misrepresentations by Defendant, Plaintiff has suffered damages in an amount to be determined at trial, plus costs, interest, reasonable attorney's fees, and punitive damages for Defendant's willful and intentional conduct.

**COUNT FOUR**
**NEGLIGENT MISREPRESENTATION**

68. Plaintiff hereby realleges and adopts the preceding paragraphs of this Complaint as if set out more fully herein.

69. Cherokee was acting in the course of business, when selling the equipment Elora Gin. The sale of the equipment was a pecuniary transaction.

70. In the course of the transaction, Cherokee made representations and supplied information to Elora Gin.

71. Cherokee failed to exercise reasonable care in obtaining or communicating the information. Cherokee failed to correct false information it supplied Elora Gin. Elora Gin justifiably relied upon the representations of Cherokee. In relying upon the false representations of Cherokee, Elora Gin has suffered damages.

## COUNT FIVE
## CONVERSION

72. Plaintiff hereby realleges and adopts the preceding paragraphs of this Complaint as if set out more fully herein.

73. Upon information and belief, Defendant has unlawfully taken and converted to its own use and benefit certain property of Plaintiff, namely, the funds of Plaintiff remitted to Defendant for the purchase of the equipment.

74. Defendant knowingly, intentionally, wrongfully, unlawfully, and maliciously appropriated funds and/or property belonging to Plaintiff by exercising dominion and control over said funds and/or equipment in defiance of the contractual rights of Plaintiff.

75. As a result of Defendant's tortious conversion as described herein, Plaintiff has been injured and sustained damages for which the Defendant is liable in an amount to be determined at trial, plus costs, interest, reasonable attorney's fees, and punitive damages.

## COUNT SIX
## UNJUST ENRICHMENT

76. Plaintiff hereby realleges and adopts the preceding paragraphs of this Complaint as if set out more fully herein.

77. Plaintiff remitted funds in the amount of $118,296.00 to Defendant under the terms of the Agreement in exchange for shipment and/or delivery of the equipment as specified therein.

78. Because Plaintiff has not been provided with the equipment, Defendant unjustly benefited and has been unjustly enriched.

79. Despite Plaintiff's demands for the return of the $118,296.00 paid over to Defendant, Defendant has failed to and refused to refund the said amounts which are due and owing to the Plaintiff.

80. Defendant continues to be unjustly enriched by failing to return Plaintiff's funds for equipment that was never delivered.

81. Therefore, Plaintiff claims that an amount to be determined at trial is due from Defendant to prevent a windfall for unjust enrichment.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff demands the following:

A. That proper process issue and be served upon Defendant and that Defendant be required to appear and answer this Complaint;

B. That Plaintiff be awarded a judgment against Defendant for the breach of contract in an amount to be determined at trial for compensatory damages, plus any incidental and consequential damages, costs, interests, and attorney's fees;

C. That Plaintiff be awarded a judgment against Defendant for fraud in an amount to be determined at trial, plus punitive damages, and reasonable attorney's fees;

D. That Plaintiff be awarded a judgment against Defendant, for conversion in an amount to be determined at trial;

E. That Plaintiff be awarded a judgment against Defendant, for unjust enrichment for an amount to be determined at trial;

F. That Plaintiff be awarded a judgment for prejudgment interest, post judgment interest and its costs, expenses, incidental and consequential damages, and reasonable attorneys' fees; and,

G. All other general and specific legal and equitable relief to which Plaintiff is entitled in the premises.

## JURY DEMAND

Plaintiff hereby demands trial by jury, a maximum number of jurors permitted by law, on all issues so triable.

Respectfully submitted,

David J. Hodge, BPR #037353

Of Counsel:
MORRIS, KING & HODGE, PC
200 Pratt Avenue, NE
Huntsville, Alabama 35801
Ph: 256-536-0588
Fax: 256-533-1504
Email: dhodge@mkhlawyers.com
*Attorney for Plaintiff*

**Morris, King & Hodge, P.C**.
200 Pratt Avenue, N.E.
Huntsville, Alabama 35801
Phone: (256) 536-0588
Fax: (256) 533-1504
Email: jaiello@mkhlawyers.com

**Morris, King & Hodge, P.C**.
200 Pratt Avenue, N.E.
Huntsville, Alabama 35801
Phone: (256) 536-0588
Fax: (256) 533-1504
Email: jasmine@mkhlawyers.com

Joey D. Aiello**
Attorney for Plaintiff

Jasmine M. Matlock**
Attorney for Plaintiff

***pro hac vice* application forthcoming